UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:20-CR-00018 |
| v. | ) | |
| | ) | JUDGES VARLAN/MCCOOK |
| MARILYN STERK | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Marilyn Sterk, and the defendant's attorney, David N. Fautsch, have agreed upon the following:

1. The defendant will plead guilty to the following counts in the indictment:

    a) Count One. Conspiracy to commit wire fraud and mail fraud, in violation of 18 U.S.C. §§ 1349, 1341 and 1343.

    The punishment for this offense is as follows. Imprisonment for a period of up to 20 years, a period of supervised release of up to three years, a fine of up to $250,000, a special assessment of $100, and forfeiture and restitution in accordance with the law.

    b) Count Two. Conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

    The punishment for this offense is as follows. Imprisonment for a period of up to 20 years, a period of supervised release of up to three years, a fine of up to the greater of $500,000 or twice the amount involved in the money laundering transaction, a special assessment of $100, and forfeiture in accordance with the law.

2. There are no remaining counts in the indictment. The United States agrees not to further prosecute the defendant in the Eastern District of Tennessee for any other non-tax criminal

offenses committed by the defendant that are related to the charges contained in the indictment in this case and that are known to the United States Attorney's Office for the Eastern District of Tennessee at the time this plea agreement is signed by both parties.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crimes charged. Specifically, the elements of the offenses are as follows:

    a) **Conspiracy to commit wire fraud and mail fraud, in violation of 18 U.S.C. § 1349:**

        1) Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit a fraud crime listed in Title 18, United States Code, Chapter 63, as charged in the indictment;

        2) The defendant knew the unlawful purpose of the plan and willfully joined in it.

    b) **Mail fraud, in violation of 18 U.S.C. § 1341:**

        1) The defendant devised or intended to devise a scheme or artifice

            A) to defraud, or

            B) to obtain money or property by means of false or fraudulent pretenses, representations or promises, and

        2) For the purpose of executing the scheme or artifice or attempting to do so, the defendant

            A) placed in an authorized depository for mail matter any matter or thing to be sent or delivered by the Postal Service, or

            B) took or received from an authorized depository for mail matter any matter or thing, or

C) knowingly caused to be delivered by mail or by any private or commercial interstate carrier any matter or thing

    i) according to the direction thereon; or

    ii) at the place at which it is directed to be delivered by the person to whom it is addressed deposits;

D) or caused to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier.

c) **Wire fraud, in violation of 18 U.S.C. § 1343:**

1) The defendant devised a scheme to defraud, or to obtain money or property by materially false or fraudulent pretenses, representations or promises (or willfully participated in such a scheme with knowledge of its fraudulent nature);

2) The defendant acted with the intent to defraud;

3) In advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

d) **Conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h):**

1) Two or more persons conspired, or agreed, to commit the crime of money laundering in violation of 18 U.S.C. §§ 1956(a)(2)(A)(ii) or (a)(2)(B)(i); and

2) The defendant knowingly and voluntarily joined the conspiracy.

e)   **International Money Laundering (Promotion), in violation of 18 U.S.C. § 1956(a)(2)(A)(ii):**

1)   The defendant transported, transmitted, transferred or attempted to transport, transmit, or transfer monetary instruments or funds, from a place in the United States to a place outside the United States.

2)   The defendant had the intent to promote the carrying on of specified unlawful activity, that is, wire fraud or mail fraud.

f)   **International Money Laundering (Concealment), in violation of 18 U.S.C. § 1956(a)(2)(B)(i):**

1)   The defendant transported, transmitted, transferred or attempted to transport, transmit, or transfer monetary instruments or funds, from a place in the United States to a place outside the United States;

2)   The defendant knew that that the monetary instruments or funds involved in the transportation represented the proceeds of some form of unlawful activity;

3)   The defendant knew that such transportation, transmission or transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity, that is, wire fraud or mail fraud.

4.   In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

4

Beginning in 2014, and continuing through November of 2018, the defendant, Marilyn Sterk, worked with Ankur Khemani, Gaurav Bhasin, Jennifer Sterk, Teresa Sterk, and other, unindicted co-conspirators to sell worthless and unnecessary computer programs and services to victims in the United States. At the beginning of her involvement, Marilyn Sterk was not specifically aware that her work with Khemani was fraudulent. Marilyn Sterk admits, however, that at a later period of time she did become aware of a high probability that, as described below, her work with Khemani was fraudulent, that she deliberately ignored evidence of the fraud, and that she knowingly and voluntarily continued to engage in activity in furtherance of the conspiracy.

At all times during the conspiracy, defendants Khemani and Bhasin were citizens of India. Khemani possessed sophisticated knowledge the use of false and deceptive advertising through "pop-up" advertisements on victim consumer's computers or resulting from victim's searches on the internet for computer repair. The "pop-up" advertisements devised by Khemani would entice victims to call a toll-free number, which would place the victims in contact with a call center in India that was operated or sub-contracted by Khemani.

Upon contacting the call centers, the victim would be provided false information regarding the victim's computer under the guise of legitimate technical support. The call center worker would attempt to frighten the victim with false statements that the security of the victim's computer had been compromised by hackers or malware, and that dire consequences could be avoided only by purchasing software and/or services offered by the call center. Such communications of false information from the call center to the victims were made by an international telephone transmission and by use of the Internet.

5

Those victims who agreed to purchase the unneeded software or services were instructed to send payment to an address in the United States, either by U.S. Mail or prepaid FedEx delivery. These addresses were under the control of Marilyn Sterk, Jennifer Sterk, Teresa Sterk, or other, unindicted co-conspirators.

Marilyn Sterk became acquainted with Khemani in approximately 2012, when she sought out assistance with her computer and contacted a technical support call center and was connected with Khemani. Marilyn Sterk ostensibly received computer repair services from Kheman during their online contact. Thereafter, Khemani continued to befriend Marilyn Sterk and induced her to become Facebook friends. Khemani subsequently proposed to Marilyn Sterk that she assist him in his business by setting up addresses and business entities in the United States so that Khemani could receive money from computer repair customers and use Google and Bing advertisement services.

As a result of Khemani's ingratiation, including his visits to Iowa and invitation to Marilyn Sterk to attend his wedding in India, Marilyn Sterk ultimately agreed to establish and incorporate business entities in the State of Iowa for purposes of receiving the proceeds of the false or misleading on-line computer repair and technical support services. As part of the scheme, Marilyn Sterk deposited checks and payments from victims into bank accounts established in various banks in Iowa and remitted the majority of the proceeds to Khemani via bank wire transfer. Marilyn Sterk ultimately registered various sham business entities in the State of Iowa, including Azure Support, Cloudcomm Technologies, M&A Tech and Toler Tech, and opened bank accounts for these companies for the purpose of accepting and transferring victims' funds. The corporate entities were given technical-sounding names to

6

Case 3:20-cr-00018-TAV-JEM   Document 98   Filed 09/09/22   Page 6 of 13   PageID #: 350

create the false impression on the part of the victims that they were doing business with legitimate technical support companies located in the United States.

Upon receiving funds that they knew to be proceeds of the fraudulent sale of bogus software and technical support services, Marilyn Sterk and her co-conspirators would send the funds – minus a percentage retained as their share - via U.S. Mail or wire transfer, to co-conspirator Gaurav Bhasin, or to other individuals located in the United States and India. Accepting the victims' payments at addresses in the United States, then transferring those funds to India, had the purpose of concealing the fraudulent nature of the bogus technical support scheme and as well as its operations outside the United States, and served to promote the scheme's continued operations. The fraud scheme resulted in losses to more than 14,000 victims.

5. In accordance with Fed. R. Crim. P. 11(c)(1)(B), the parties agree and stipulate that the following provisions of the Sentencing Guidelines will be applicable to computing the defendant's sentence: § 2B1.1(b)(1)(I) (loss exceeding $1.5 million but less than $3.5 million); § 2B1.1(b)(2)(A) (offense involved 10 or more victims); § 2B1.1(b)(10) (substantial part of the fraudulent scheme was committed from outside the United States); § 3A1.1(b)(1) and (2) (offense involved a large number of vulnerable victims); and § 3B1.2(b) (minor participant).

6. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the terms set forth in preceding paragraph are not binding on the Court, and if rejected by the Court, may not be used as the basis to rescind this plea agreement or to withdraw the defendant's guilty plea.

7. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

a) the right to plead not guilty;

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

8. The parties agree, pursuant to Fed. R. Crim. P. 11(c)(1)(B), that the appropriate disposition of this case would be a sentence of imprisonment for a period up to, but not more than, one year and one day. The United States will not recommend a sentence of imprisonment greater than one year and one day, and the defendant remains free to argue that the Court should not impose any term of imprisonment. Additionally, the Court may impose a period of supervised release, any lawful fines and any special assessment fees as required by law, and order forfeiture as applicable and restitution as appropriate. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the terms set forth this paragraph are not binding on the Court, and if rejected by the Court, may not be used as the basis to rescind this plea agreement or to withdraw the defendant's guilty plea.

9. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level

pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offenses, including violations of conditions of release or the commission of any additional offenses prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

10. The defendant agrees to pay the special assessment in this case prior to sentencing.

11. The defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victims of any offense charged in this case; and (2) the victims of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's charged offenses.

12. Financial Obligations. The defendant agrees to pay all fines and/or restitution to the Clerk of Court and all payments for money judgments to the United States Marshals Service. The defendant also agrees that the full fine, restitution, and/or money judgment amounts shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without

notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

      a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

      b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

13. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offenses committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

      a) The defendant will not file a direct appeal of the defendant's convictions or sentence with one exception: The defendant retains the right to appeal a sentence imposed above

10

Case 3:20-cr-00018-TAV-JEM  Document 98  Filed 09/09/22  Page 10 of 13  PageID #: 354

the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

    b)  The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's convictions or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

    c)  The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

  14.  This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty pleas as agreed herein, moving to withdraw guilty pleas after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant

expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty pleas in this case.

15. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

*(The remainder of this page is blank.)*

16. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charges, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

9/9/2022
Date

By: _____
Frank M. Dale, Jr.
Assistant United States Attorney

9-8-2022
Date

_____
Marilyn Sterk
Defendant

Sept. 8, 2022
Date

_____
David N. Fautsch
Attorney for the Defendant

13